UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
S.G.,                         )
                              )
        Plaintiff,            )
                              )
     v.                       )    Case No. 2:21-cv-73
                              )
Kilolo Kijakazi, Acting       )
Commissioner of the Social    )
Security Administration,      )
                              )
        Defendant.            )
```

## OPINION AND ORDER

Plaintiff S.G. applied for disability insurance benefits under the Social Security Act.  The Social Security Administration denied his application at the administrative level, and he now moves for an order reversing that decision. Also before the Court is the Commissioner's motion for an order affirming the ruling.  For the reasons set forth below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded.

## Background

### I.  Procedural History

Plaintiff applied for disability insurance benefits in February 2019.  A prior application was denied in March 2018. Plaintiff's 2019 claim was also denied, both initially and upon reconsideration, and he requested an administrative hearing. Following the hearing, an Administrative Law Judge ("ALJ")

issued a written decision concluding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for administrative review.  This action follows.

## II.  Plaintiff's Medical History

At the time of the ALJ's decision, Plaintiff was 45 years old.  His past relevant work was as a concrete mixing truck driver and concrete laborer.  In September 2016, he suffered a work injury when a furnace fell on his left knee.  He has not worked since that time.

Plaintiff contends that September 2016 is his alleged onset date of disability.  The Commissioner submits that, because Plaintiff's last claim was denied on June 15, 2018, the relevant period for his current claim began on June 16, 2018.  Regardless of the relevant date for benefits, the record shows that Plaintiff began orthopedic treatment with Dr. Matthew Nofziger in October 2016.  Dr. Nofziger recommended left knee replacement, and the procedure was performed in February 2019.  Plaintiff continued to experience left knee pain after the surgery.

On January 21, 2016, Plaintiff was examined and evaluated by psychologist Dr. Gregory Korgeski.  Plaintiff scored a 21 out of 30 on Dr. Korgeski's mental status examination ("MSE"), which is in the impaired range.  Specific shortcomings included slow processing, forgetfulness, memory lapses, and poor

2

concentration.  Dr. Korgeski assessed chronic depressive disorder with recent exacerbations and possible borderline intellectual ability.

Plaintiff was seen for an evaluation by Dr. Dean Mooney on April 10, 2019, though the evaluation was performed primarily by a psychologist trainee, Elizabeth Taylor.  Ms. Taylor noted that Plaintiff walked slowly, slumped when he sat, and presented as depressed.  She also noted a slight shakiness in his hand. Plaintiff scored an 18 out of 21 on the Mini-Mental State Examination, suggesting a mild cognitive impairment.  In Ms. Taylor's opinion, Plaintiff exaggerated his symptoms.  She nonetheless opined that, given Plaintiff's report of his girlfriend handling his finances, he would likely benefit from a payee handling any money he receives.

In September 2019, Plaintiff received a psychiatric consultative evaluation from Jane Worley, APRN.  Ms. Worley noted symptoms consistent with Parkinson's disease. Specifically, Plaintiff had a tremor in his right hand that produced remarkable squiggle lines.  He also demonstrated a slight limping of the left leg, and his arms did not swing at the sides of his body.  Ms. Worley noted that despite great efforts at concentration, Plaintiff's memory was poor.  She opined that Plaintiff had a neurocognitive disorder secondary to Parkinson's disease, and major depressive disorder.  She further

concluded that Plaintiff had a social anxiety disorder and attention deficit disorder, both of which might be attributed to a dementia process. Like Ms. Taylor, Ms. Worley recommended that Plaintiff have a representative payee handle any benefits he received.

Plaintiff received treatment at United Counseling between December 2017 and July 2018, and again beginning in November 2018 with Dr. Catherine Hickey. Dr. Hickey completed a Medical Source Statement on June 18, 2020, on which she stated that Plaintiff would be expected to be off-task more than 20% of the time; was unable to concentrate and focus on work-related tasks for more than two-hour periods of time; would be unable to cope with criticism from supervisors; and would be absent from work approximately three times per month. She also concluded that due to Plaintiff's depression, it was unlikely he would be able to work a 40-hour week consistently.

Plaintiff received counseling from Meghan Karhan beginning in August 2019. Ms. Karhan authored a report in which she diagnosed Plaintiff with a major depressive disorder. She also noted outbursts of anger arising from his inability to express his emotions effectively. Ms. Karhan opined that Plaintiff's depressive symptoms would limit him from staying on task and working an eight-hour day, as he would lack motivation, energy, and concentration.

4

Plaintiff was also diagnosed with Type 2 diabetes mellitus. On July 10, 2019, he saw his primary care provider, Physician's Assistant Paul Graether, for neuropathy.  Mr. Graether noted that Plaintiff's hands were shaking and that it impacted his ability to write.  Mr. Graether noted hand tremors again on August 15, 2019.  Plaintiff also demonstrated issues with balance, and was referred to neurologist Dr. Robert Van Uitert.

Plaintiff first saw Dr. Van Uitert on September 6, 2019.  A physical examination showed diminished sensation to pin and touch sensation up to the knees in both legs, as well as in the fingertips and upper extremities.  Plaintiff also had diminished vibration up to the hips and in the wrists, and an increased tremor particularly in his right hand.  Dr. Van Uitert believed that the tremor was most likely Parkinson's disease, and the neuropathies were almost certainly related to diabetes.  For treatment, he prescribed Sinemet.

After Plaintiff had an MRI of his brain, Dr. Van Uitert again concluded that he most likely had Parkinson's disease. The MRI showed a small to moderate number of nonspecific hyperintense white matter foci bilaterally, which reportedly indicates demyelinating disease "within differential, particularly since one of those lesions radiates from the left lateral ventricle."  ECF No. 16-1 at 7 (citing AR 672).

Between October 2019 and May 2020, Dr. Van Uitert continued
to note tremors, while also observing improvement.  On May 27,
2020, he did not observe any tremors in the upper extremities
and stated that Plaintiff's Parkinson's disease appeared to be
under reasonably good control.  Nonetheless, he continued to
observe diminished pinprick and vibration sensations in the
fingertips and wrist.

On June 22, 2020, Dr. Van Uitert completed a Medical Source
Statement.  His Statement indicated that Plaintiff had
Parkinsonian Syndrome consistent with Section 11.06 of the
Social Security Listing.  When the Statement asked whether
Plaintiff "could have had symptoms related to Parkinson's
disease prior to" undergoing the brain MRI, Dr. Van Uitert wrote
that Plaintiff had been "gradually worsening over time" and
"probably had [the] condition [for] 2-3 years prior to being
seen."  AR 1163.  With respect to signs of the disease, Dr. Van
Uitert noted "tremor and dropping objects, falling episodes,
[and] walking difficulties."  AR 1159.  As to manipulative
limitations, he opined that Plaintiff had a "limited" ability to
reach in any direction, handle (gross manipulation), or finger
(fine manipulation).  AR 1160.  He also opined that Plaintiff
would be unable to engage in any of those functions during any
part of a workday, writing "No Work" in several places on the
form.  AR 1160-1162.  Finally, Dr. Van Uitert checked "no" in

6

response to the question: "does [Plaintiff] have the ability to concentrate and focus on job related tasks for continuous 2-hour periods of time consistently throughout an 8-hour workday and 5-day workweek."  AR 1162.  His Statement was entered into the record after the hearing before the ALJ.

In October 2019, state agency physician Dr. Leslie Abramson reviewed the record (which did not include Dr. Van Uitert's subsequent Statement) and concluded that Plaintiff's Parkinson's disease and peripheral neuropathy were severe impairments.  Dr. Abramson also concluded that those impairments did not impose any manipulative limitations.  Dr. Abramson assessed Plaintiff as able to lift and carry 20 pounds occasionally and 10 pounds frequently, with a capacity to walk and stand for three hours and sit for six hours.  Plaintiff notes that Dr. Abramson's specialty is in pediatrics.

State agency mental health reviewer Eric Jensen, Ph.D., assessed Plaintiff as capable of performing 1-2 step tasks.  He also viewed Plaintiff as moderately limited in his ability to complete a normal workday and workweek without interruptions due to psychological issues.  He assessed Plaintiff as markedly limited in his ability to interact with the public, but as capable of routine interactions with co-workers and supervisors. Agency consultant Roy Shapiro, Ph.D., found the same limitations as Dr. Jensen.

7

Dr. Jensen's report referenced a Job Screening Questionnaire provided by Plaintiff's former employer, F.W. Webb.  Specifically, in his summary of mental health evidence, he stated: "Review of longitudinal record established [Plaintiff] has reported chronic and severe levels of depression with bouts of anger, recurrent [suicidal ideation] (no attempts) and problems related to learning and memory.  These problems were evident in [the Job Screening Questionnaire] covering period 2/16-4/17."  AR 202.  Dr. Jenson also noted that the Questionnaire found "some difficulties learning jobs in expected time, maintaining acceptable hygiene, disrupting others, performing repetitive tasks, carrying out simple tasks in a reasonable amount of time and operating under normal supervision."  AR 202.

Plaintiff has a body mass index of over 40, which the Social Security Administration considers "extreme" obesity.

## II. The Administrative Hearing

A telephonic administrative hearing was held on May 28, 2020, with ALJ Matthew Levin presiding.  Plaintiff testified that in 2017 he had an emergency mental health evaluation after experiencing suicidal thoughts.  After trying a few medications, he began taking Depakote which he described as "somewhat working."  AR 142.  He also reported positive impacts from fluoxetine.

Plaintiff further testified about his Parkinson's disease diagnosis, and the results of the MRIs.  The ALJ asked about tremors, and Plaintiff confirmed that "I do have tremors.  I have them pretty severe."  AR 151.  After additional questions, he continued his testimony:

> Well, I have both my hands – I tremor in both my hands.  And it's hard for me to, you know, simple things of getting dressed.  I shake so much that I have a hard time putting my pants on or getting my shoes on or tying my shoes because I'm shaking so much.  Like I said, getting my coffee in the morning, I – half the time I spill most of it out because I'm shaking so bad.  Shower, have a hard time because I can't hold on.  I try to hold to something, but I'm always shaking.  And so there's been on – a couple of times that I have fell in the shower because of my shaking.  I've lost balance and fell.  So on a daily basis, it's tough.

AR 152.  Plaintiff also testified that he feels "nothing from the waist down."  *Id.*  In response to a question from the ALJ, Plaintiff's counsel explained that the numbness was most likely due to diabetes and Parkinson's disease, and that a more exact explanation from Dr. Van Uitert was expected in the near future. Finally, Plaintiff testified that he had experienced cognitive decline over a period of years, as well as continuing anger outbursts.

A Vocational Expert ("VE") also testified.  The ALJ asked the VE to assume a hypothetical claimant of Plaintiff's age, education, and vocational background who was: limited to light work; could stand and walk for three hours out of an eight-hour

workday; sit for six hours; occasionally climb stairs;
occasionally balance while avoiding narrow, slippery, or
erratic, moving surfaces; occasionally crouch; understand 1-2
step tasks and perform those tasks in two-hour increments during
an eight-hour workday; and adapt to routine changes while
avoiding settings that demand high productivity.  The VE,
assuming a sedentary level of activity, opined that such a
claimant could work as a sorter, addresser, or stuffer.  When
the ALJ changed the hypothetical to add manipulative limitations
such that the claimant could only occasionally handle or finger
with either hand, the VE testified that the claimant would no
longer be able to perform the previously-identified jobs.  Being
off-task more than 10% of the time would also bar employment.

### III. The ALJ's Decision

The Commissioner uses a five-step sequential process to
evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d
377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to
determine whether the claimant is presently engaging in
"substantial gainful activity."  20 C.F.R. §§ 404.1520(b),
416.920(b).  If the claimant is not so engaged, step two
requires the ALJ to determine whether the claimant has a "severe
impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ
finds that the claimant has a severe impairment, the third step
requires the ALJ to make a determination as to whether that

10

impairment "meets or equals" an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§
404.1520(d), 416.920(d).  The claimant is presumptively disabled
if his or her impairment meets or equals a listed impairment.
*Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is
required to determine the claimant's residual functional
capacity ("RFC"), which refers to the most the claimant can
still do despite his or her mental and physical limitations
based on all the relevant medical and other evidence in the
record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e),
416.945(a)(1).  The fourth step requires the ALJ to consider
whether the claimant's RFC precludes the performance of his or
her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).
Finally, at the fifth step, the ALJ determines whether the
claimant can do "any other work."  20 C.F.R. §§ 404.1520(g),
416.920(g).  The claimant bears the burden of proving his or her
case at steps one through four, *Butts*, 388 F.3d at 383.  At step
five, there is a "limited burden shift to the Commissioner" to
"show that there is work in the national economy that the
claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir.
2009) (clarifying that the burden shift to the Commissioner at
step five is limited, and the Commissioner "need not provide
additional evidence of the claimant's [RFC]").

11

Employing the sequential analysis in this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 16, 2016.  At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis of the left knee; obesity; diabetes mellitus with peripheral neuropathy; Parkinson's disease; a depressive disorder; and a learning disorder.  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment.

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in the Social Security regulations, with the ability to stand/walk for three hours and sit for six hours in an eight-hour day. Consistent with the first hypothetical presented to the VE at the administrative hearing, the ALJ found that Plaintiff could occasionally climb stairs; occasionally balance while avoiding narrow, slippery, or erratic moving surfaces; occasionally crouch; should avoid kneeling or crawling; should avoid hazards such as dangerous machinery or unprotected heights; could understand and remember simple 1-2 step tasks and do so for two-hour increments during a standard workday/week; should avoid social interactions with the general public or those that require a high amount of social collaboration, but retains the

12

capacity for routine social interaction with coworkers and supervisors; and should avoid high productivity demand settings, but could adapt to routine changes.

In reaching these conclusions, the ALJ found the opinion of state agency reviewer Dr. Abramson persuasive.  He also found the opinions of state agency consultants Drs. Shapiro and Jensen to be "consistent with the record as a whole."  AR 27.  In contrast, the ALJ found Dr. Van Uitert's opinion unpersuasive, "as it is neither well supported nor consistent with the evidence in the record."  AR 25.  The ALJ similarly dismissed the opinions of Ms. Worley as not well supported by the record, and therapist Ms. Karhan's conclusions as inconsistent with her own treatment notes.  Finally, the ALJ dismissed Dr. Hickey's mental health conclusions as not well supported or consistent with the evidence in the record.  In sum, the ALJ endorsed the opinions of the state agency reviewers, and gave little weight to the opinions of Plaintiff's several treating providers.

Having established the RFC described above, and based upon the testimony of the VE, the ALJ found that Plaintiff could perform full-time work as a sorter, addresser, or stuffer.

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his or her "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the Court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The Court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla, and instead amounts to such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing the administrative determination, the Court bears in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Discussion

Plaintiff objects to the ALJ's discounting of the opinions offered by his treating providers, and contends that the ALJ's RFC finding is not supported by substantial evidence. Plaintiff focuses his argument on the ALJ's conclusions with regard to manipulative limitations, including both fine and gross manipulation. Such limitations would apparently prevent Plaintiff from performing the jobs identified by the VE and the ALJ. Plaintiff also challenges the ALJ's conclusion that his RFC need not include any off-task time.

Because the instant claim was filed after March 2017, the opinions of treating providers are governed by revised regulations. *See* 20 C.F.R. §§ 404.1520c. Under those regulations, the Commissioner is no longer required "to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 120CV00261RAKHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). Nonetheless, the Commissioner must still consider certain factors in considering

medical opinions.  *See* 20 C.F.R. §§ 404.1520c(a)-(c).  The new
regulatory factors are: (1) supportability, (2) consistency, (3)
relationship with the claimant (which has five sub-factors of
its own to consider), (4) specialization, and (5) other factors.
20 C.F.R. §§ 404.1520c(c).  An ALJ must explain his approach
with respect to the first two factors, but need not provide such
explanation with respect to the remaining three.  20 C.F.R. §§
404.1520c(b).

     As to the first two required factors, the strength of a
medical opinion increases as the relevance of the objective
medical evidence and explanations presented by the medical
source increase.  20 C.F.R. §§ 404.1520c(c)(1).  With respect to
consistency, the new rules provide that the more consistent a
particular medical opinion is with other evidence in the medical
record, the stronger that medical opinion becomes.  20 C.F.R. §§
404.1520c(c)(2).  "Simply put, consistency is an all-
encompassing inquiry focused on how well a medical source is
supported, or not supported, by the entire record."  *Vellone*,
2021 WL 319354, at *6.

     Here, Dr. Van Uitert opined that Plaintiff has both fine
and gross manipulation limitations.  Those limitations are due
at least in part to Plaintiff's Parkinson's disease.  Several of
Plaintiff's providers have noted tremors and shaking in
Plaintiff's hands consistent with Parkinson's disease.  For

16

example, in early 2019 evaluator Elizabeth Taylor noted shakiness.  Later that same year, consulting examiner Jane Worley noted bilateral hand tremors resulting in "squiggle lines."  AR 692.  Primary care provider Mr. Graether also noted shaking that impacted Plaintiff's ability to write.  Mr. Graether referred Plaintiff to Dr. Van Uitert.

Dr. Van Uitert observed tremors during several office visits through March 2020.  In May 2020, Dr. Van Uitert indicated that Plaintiff's tremors were under good control.  The ALJ's opinion cited that notation, as well as Plaintiff's own comment that tremors were tolerable with medication, and proceeded to find that manipulative limitations were not supported by the record.  AR 26.  In doing so, the ALJ dismissed Dr. Van Uitert's June 22, 2020 Medical Source Statement, which concluded that Plaintiff would be unable to work in part because of a limited ability to reach, handle, or finger.  The ALJ declared Dr. Van Uitert's conclusion unpersuasive.

The ALJ's failure to credit Dr. Van Uitert's opinion was contrary to the evidence and the guidance provided by the Social Security regulations.  Unlike state agency reviewer Dr. Abramson, the pediatrician whom the ALJ found persuasive, Dr. Van Uitert specializes in neurology.  His examinations of Plaintiff over a period of several months regularly found both tremors and neuropathy in Plaintiff's extremities, which

symptoms Dr. Van Uitert attributed to Parkinson's disease and
diabetes.  Both of those diagnoses were objectively evident and
echoed by other providers, thus satisfying the regulatory
criteria of supportability and consistency.  Moreover, Dr. Van
Uitert had a longitudinal relationship with Plaintiff that
provided a unique perspective on Plaintiff's long-term
capacities.

Improvement in Plaintiff's condition shortly prior to the
administrative hearing did not suggest a resumed ability to
engage in gross and/or fine manipulation in the workplace.  This
point was made clear by Dr. Van Uitert's post-hearing Medical
Source Statement.  Plaintiff has Parkinson's disease and
diabetes with related tremors and neuropathy, and while his
tremors may have been "tolerable" in mid-2020, there is no
indication in the record that he would be able to handle or
finger work items over the course of full-time employment.

The Commissioner highlights Plaintiff's life activities,
such as caring for and engaging with his children, as evidence
that Plaintiff is able to use his hands and fingers.  ECF No. 17
at 6.  However, participation in activities such as school
events or other volunteering provides no support for the ALJ's
conclusions with respect to either gross or fine manipulation.
Furthermore, the Commissioner's observation that Plaintiff has
been able to complete handwritten function reports, and the

18

concurrent suggestion that Plaintiff's legible handwriting undermines his claims of poor manipulation, is questionable as those reports were primarily completed by Plaintiff's girlfriend.  AR 343.

A review of the entire record reveals that the ALJ's reliance on the state agency consultants, and in particular Dr. Abramson, was misplaced.  Dr. Abramson reviewed Plaintiff's treatment notes through September 20, 2019.  AR 203.  Based on that review, Dr. Abramson noted improvement with medication (Sinemet).  That review did not encompass subsequent reports, such as Dr. Van Uitert's January 2020 notation that tremors continued to cause Plaintiff to spill his coffee, or the March 2020 notation that medication "doesn't seem to be as effective at the present time" and that the tremors were "more pronounced than [Plaintiff's] last visit."  AR 963.  These portions of the record were entirely consistent with Plaintiff's hearing testimony, and speak to the intermittent nature of Parkinson's disease symptoms.  Nonetheless, the ALJ largely dismissed Plaintiff's testimony, as well at the Statement of his treating neurologist.  Although the ALJ was correct that Dr. Van Uitert's ultimate conclusion as to Plaintiff's ability to work ("no work") is reserved to the Commissioner, he erred when he dismissed Dr. Van Uitert's opinion as unpersuasive.

The ALJ also rejected the opinions of Plaintiff's mental health providers, most specifically Dr. Hickey and Ms. Karhan. Perhaps Dr. Hickey's most significant opinion was that Plaintiff would be off task more than 20% of the time.  The VE testified that being off task more than 10% of the time would render a claimant unemployable.

Dr. Hickey, Plaintiff's treating psychiatrist, found that Plaintiff was depressed and did not respond well to antidepressant therapy.  "Concentration is poor and he is unlikely to be able to work consistently 8 hours daily/40 hours weekly."  AR 1152.  Mr. Karhan similarly noted Plaintiff's depression as an impediment to his ability to stay on-task: "his lack of motivation and energy would be huge barriers for him in any sort of job force."  AR 1106.

Even the agency consultants found that Plaintiff would be moderately impaired in his ability to complete a normal workday or workweek without interruption.  Dr. Jensen concluded that Plaintiff would be moderately limited in his ability "to perform at a consistent pace without an unreasonable number and length of rest periods."  AR 208.  Dr. Shapiro, whom the ALJ found "most persuasive" together with Dr. Jensen, apparently made the same finding.  AR 26-27.  Finally, Plaintiff's former employer, F.W. Webb, provided a Job Screening Questionnaire in which off-task time was highlighted as an issue.  AR 1167.  Dr. Jensen

20

mentioned the Questionnaire in his assessment, but it was not referenced in the ALJ's opinion.

Again, the supportable conclusion, as evidenced by the record, is that Plaintiff's off-task time would be unacceptable to a full-time employer. The ALJ rejected Dr. Hickey's conclusion as speculative, yet that conclusion was largely consistent with both Plaintiff's providers and suggestions by the agency reviewers. Evidence cited by the ALJ to support his own conclusion included portions of the record referencing Plaintiff's mental status. *See, e.g.,* AR 28 (citing evidence that Plaintiff was "calm, interactive, and well groomed"). Those momentary observations of mental status, however, offered little insight into whether Plaintiff would be off-task during an eight-hour workday. Instead, the record indicates that Plaintiff's cognitive challenges and mental health issues would result in him being off task approximately 20% of the time. The ALJ's conclusion to the contrary was not supported by substantial evidence.[1]

## Conclusion

For the reasons set forth above, Plaintiff's motion to reverse the decision of the Commissioner (ECF No. 16) is

---

[1] Because the Court's findings would disqualify Plaintiff from full-time employment, it need not address Plaintiff's remaining arguments.

granted, the Commissioner's motion to affirm (ECF No. 17) is denied, and this case is remanded for further proceedings.

DATED at Burlington, in the District of Vermont, this 18th day of July, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge